# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | C.A. No.: 2:08-CR-144 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| CHRISTOPHER MICHAEL SINCLAIR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____) | | |

This matter is before the Court on Defendant Christopher Michael Sinclair's ("Defendant") Motion to Suppress evidence. For the reasons set forth herein, the Court denies Defendant's Motion.

## BACKGROUND

On November 1, 2007, officers of the North Charleston Police Department arrested a suspect with an undisclosed quantity of drugs. The suspect at that time offered to cooperate with police and help them apprehend his supplier. At that point, this suspect became an informant, and the informant, in cooperation with the NCPD officers, called Defendant and arranged for Defendant to meet the informant for a control purchase of five pounds of marijuana in a gas station parking lot.

However, the control purchase never took place.[1] Defendant arrived at the location, and was identified by both the informant, who was present with the officers, and officers familiar with Defendant's identity. At that point, Defendant made a phone call to the informant, but then drove away. As Defendant drove away from the proposed site of the control transaction, police

---

[1] There appears to be some dispute as to why the control transaction did not occur. Defendant asserts that he elected not to enter into the transaction, but the Government claims that there was some sort of misunderstanding and Defendant left.

conducted a traffic stop on Defendant's vehicle. Defendant was asked to step out of the car. At this point, Defendant was asked if he had any weapons on his person, and responded that he had a gun in his waistband. Police located the gun in his waistband and removed it from Defendant's person. At the hearing, Defendant attempted to introduce testimony that the gun was not actually owned by Defendant. However, this information, even if true, would have made little difference, as the gun was certainly located in his car, which also contained the five pound package of marijuana, which he admitted was his. Police officers allegedly used a K-9 unit in and around the vehicle, which alerted officers to the presence of drugs in the vehicle. The arresting officer testified at the hearing that when Defendant was asked to exit the vehicle and opened the door, he could smell the odor of marijuana emanating from the cab of the vehicle. At this point, officers searched Defendant's vehicle, and located five pounds of marijuana. Defendant was then placed under arrest and taken to the police department. He was given his *Miranda* rights, and signed a form indicating that he waived those rights. He then gave a statement, which was put into writing by a detective and reviewed and signed by Defendant.

Defendant was indicted for possession with intent to distribute a quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); being a felon in possession of a handgun in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1); and using and carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) on February 13, 2008. The present Motion to Suppress Evidence was filed on May 7, 2009, and the Government filed a Response in Opposition on May 12. A hearing on these issues was held on May 14.

## ANALYSIS

The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

### I.     Automobile Stop

Defendant first asserts that the automobile stop was unlawful. The Government does not dispute that Defendant broke no traffic law. However, the Government asserts that the informant and Defendant had agreed to meet for a control transaction at a specific gas station. Defendant was observed arriving at the gas station in his automobile, and his identity was confirmed by officers and the informant. Defendant was observed talking on the phone at the gas station to the informant, who was in the presence of police throughout the conversation. At this point, Defendant left the gas station, and was pulled over by police shortly after.

The Government argues that given the information available to them, they had a strong, reasonable suspicion that Defendant had drugs in his car and was on his way to an attempted drug trafficking transaction when he was pulled over. They assert that this was sufficient for them to initiate a traffic stop on Defendant absent a traffic violation.

The Fourth Amendment does offer protection to those in automobiles. However, due to the mobile nature of automobiles, with the attendant threat of removal or destruction of potentially relevant evidence, as well as the fact that automobiles are routinely driven on public motorways, people have a substantially diminished right to privacy in their automobiles. The Supreme Court of the United States has therefore held that the standard to be applied in

determining whether or not a law enforcement officer has the power to conduct a brief investigatory stop of a moving vehicle is not probable cause, but "if the officer's action is supported by a *reasonable suspicion* to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (emphasis added).  The Court gave the following guidance to lower courts in applying this "reasonable suspicion" test to cases of this sort:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting the legal wrongdoing.  *See, e.g.*, [*United States v. Cortez*, 449 U.S. 411, 417-18 (1981)].  This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id*. at 418.  *See also Ornelas v. United States*, 517 U.S. 690, 699 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers).  Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, *Terry*, 392 U.S. at 27, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, [*United States v. Sokolow*, 490 U.S. 1, 7 (1989)].
>
> Our cases have recognized that the concept of reasonable suspicion is somewhat abstract.  *Ornelas*, 517 U.S. at 696 (principle of reasonable suspicion is not a "finely-tuned standard'); *Cortez*, 449 U.S. at 417 (the cause "sufficient to authorize police to stop a person" is an "elusive concept").  But we have deliberately avoided reducing it to " 'a neat set of legal rules,' " *Ornelas*, 517 U.S. at 695-96 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).  In *Sokolow*, for example, we rejected a holding by the Court of Appeals that distinguished between evidence of ongoing criminal behavior and probabilistic evidence because it "create[d] unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment."  490 U.S. at 7-8.

*Arvizu*, 534 U.S. at 273-74.  It is clear, then, that the standard to be applied by this court is whether or not the NCPD officers in question had a "reasonable suspicion" that criminal activity may be afoot based on the totality of the circumstances.  The question of reasonable suspicion is a mixed question of fact and law.  *United States v. Oliver*, 550 F.3d 734, 738 (8th Cir. 2008).

NCPD officers specifically observed and monitored Defendant arriving at a gas station where the control transaction was to take place, then calling informant and leaving the gas station. Based upon this, law enforcement certainly had "reasonable suspicion" to believe that Defendant was driving to the new location to sell the informant marijuana, and thus had marijuana in his car. Accordingly, the investigatory stop on Defendant's car was lawful.

## II.    The Gun

The Court next turns to the issue of whether or not police were entitled to remove the gun from Defendant's person. Defendant asserts that they were not, because being asked if he had a weapon on his person was an interrogation in violation of his *Miranda* rights, which had not been given at the time. However, the evidence in the record and the testimony at the hearing make it very clear that the question was being asked to protect the safety of the apprehending officers.

Furthermore, police would have been well within their rights to conduct a frisk of Defendant's person, which would have undoubtedly resulted in the discovery of the handgun. The Supreme Court addressed a similar issue very recently. In *Arizona v. Johnson*, the Court held that it was unconstitutional for law enforcement officials to conduct a pat-down and frisk, which resulted in the seizure of a gun, of someone whom had been pulled over for having suspended vehicle registration. 129 S. Ct. 781. The Court held that "[t]o justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id*. at 784.

In the present case, the NCPD officers in question had a reasonable suspicion that Defendant was armed and dangerous. "The officer need not be absolutely certain that the

5

individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. The Fourth Circuit has instructed that "reasonable suspicion of a suspect's dangerousness need not be based solely on activities observed by the police during or just before the relevant police encounter." *United States v. Holmes*, 376 F.3d 270, 278 (4th Cir. 2004).

However, reasonable suspicion that Defendant had drugs in the car also means that there was reasonable suspicion that he was armed and dangerous. One federal court has held:

> A wide variety of factors support a reasonable belief that an individual is armed and dangerous. These include an officer's observation of a visible bulge in an individual's clothing; sudden movements or repeated attempts to reach for an object not immediately visible; and the nature of the suspected crime. However, facts merely establishing that *if* an individual were armed he would be dangerous are insufficient if there was no reason to believe that the individual actually *was* armed.

*Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009) (citations omitted) (emphasis in original). *See also United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000) (holding that law enforcement officer was reasonable in considering a suspect more likely to be armed and dangerous because he was detained on reasonable suspicion of burglary, which is a crime which often involves dangerous weapons). Numerous courts have held that drug offenses, particularly drug trafficking, so often involve the use and possession of weapons that a reasonable suspicion of committing such an offense automatically gives law enforcement reasonable suspicion that a suspect may be armed and dangerous. *See, e.g.*, *United States v. Bullock*, 510 F.3d 342, 346 (D.C. Cir. 2007) ("If an officer possesses reasonable suspicion that the detained suspect committed a violent or serious crime—such as murder, robbery, rape, burglary, assault with a weapon, or various drug offenses—the officer by definition is dealing with an individual reasonably suspected of committing a crime that involves or is associated with

6

carrying or using a weapon. In such cases, it logically and necessarily follows that the officer may reasonably conclude the suspect 'may be armed and presently dangerous.' ") (quoting *Terry*, 392 U.S. at 30); *United States v. Crespo*, 868 F. Supp. 79, 83 (M.D. Pa. 1994) ("[Suspicion of a drug transaction], in and of itself, is cause for concern and belief enough that Crespo and/or Soto was armed and dangerous. We join the growing number of courts who have taken judicial notice of the fact that drug dealers are likely to be armed and dangerous."); *United States v. Ceballos*, 719 F. Supp. 119, 126 (E.D.N.Y. 1989) ("Because of the increasingly violent nature of narcotics trafficking, including the recent killings of law enforcement officers by drug trafficking suspects within the Eastern District of New York, the need to frisk those suspected of committing a narcotics offense in the course of a street encounter is obvious.").

The proposition that drug trafficking is highly linked with dangerous weapons and violence involving such weapons is so obvious and well-established that this Court need give no further enumeration or proof of its veracity. In the present case, as explained above, law enforcement had reasonable suspicion that Defendant had a large quantity of marijuana in his automobile, and intended to sell a large quantity of marijuana to the informant. Given the well-established link between drug trafficking and gun violence, law enforcement therefore also had reasonable suspicion that Defendant was armed and dangerous. To hold otherwise would constantly put law enforcement officials in situations where they would be investigating and questioning suspected drug dealers who would be afraid of being apprehended and eventually punished, but who could very well have weapons on their persons. Such situations would undoubtedly lead to violence against law enforcement officers.

Accordingly, asking Defendant if he had any weapons on his person, and the subsequent taking of the gun into custody, was lawful, and the Court denies Defendant's Motion to Suppress this evidence.

### III.     Search of Defendant's Automobile

The Court next turns to the NCPD's search of Defendant's automobile. This search uncovered five pounds of marijuana, which was the amount allegedly agreed upon by the informant and Defendant. The Government did not have a warrant to search Defendant's vehicle.

However, one of the most well-established exceptions to the Fourth Amendment's warrant requirement is the motor vehicle exception. *Carroll v. United States*, 267 U.S. 132 (1925). "Under the 'automobile exception,' '[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.' " *United States v. Brookins*, 345 F.3d 231, 235 (4th Cir. 2003) (quoting *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). Here, the Government asserts that this search of Defendant's vehicle was supported by probable cause, and was therefore lawful under the automobile exception to the Fourth Amendment's warrant requirement.[2] Like reasonable suspicion, probable cause is to be determined by examining the totality of the circumstances. *See United States v. Dickey-Bey*, 393 F.3d 449, 457 (4th Cir. 2004). The Fourth Circuit has specifically held that when the totality of the circumstances gives a law enforcement officer

---

[2] Defendant asserts that this search was an unreasonable violation of his Fourth Amendment rights pursuant to the Supreme Court's recent decision in *Arizona v. Gant*, ___ S. Ct. ___, 2009 WL 1045962 (2009). In that case, the Supreme Court held that when a driver or passenger is arrested, law enforcement does not have the ability to search the vehicle in question pursuant to a lawful arrest where the suspect is already in custody, and there is therefore no longer any opportunity for the suspect to access weapons or evidence in the car. However, in this case, the Government is not claiming that Defendant's automobile was searched incident to a lawful arrest; rather, they are claiming that the vehicle was searched pursuant to the motor vehicle exception, and that independent probable cause existed to search the vehicle. Accordingly, *Gant* is inapplicable and irrelevant to the matter at hand.

8

probable cause to believe that there is marijuana in the car, the officer has the right to conduct a warrantless search of the vehicle. *See, e.g.*, *United States v. Davis*, 177 Fed. Appx. 347, 350-51 (4th Cir. 2006).

The Government asserts that it had probable cause based upon a number of factors, which are identical to the reasons given in support of the lower reasonable suspicion standard. The Government asserts that an informant told them that Defendant was engaged in marijuana trafficking. *Cf. Illinois v. Gates*, 462 U.S. 213 (1983) (holding that information from confidential informants can be sufficient to establish probable cause under certain circumstances). The informant called Defendant and arranged for the purchase of five pounds of marijuana. Furthermore, when contact was made in the presence of police between the informant and Defendant to set up a controlled transaction in the gas station parking lot, Defendant arrived at the arranged time, where his identity was confirmed by both the informant and law enforcement officers familiar with Defendant. At that point, Defendant made contact with informant over the telephone. Defendant was then observed leaving the gas station parking lot, and was pulled over by law enforcement.

The question, then, is whether or not this information made it more likely than not that Defendant had marijuana in his automobile. While this is a higher standard than reasonable suspicion, the information supports a finding of probable cause. The Government does not provide information about the identity and/or reliability and credibility of the informant, but there is no other explanation for Defendant's behavior other than he was trying to meet with informant to sell him five pounds of marijuana. Given this, plus the fact that Defendant was carrying a gun in his waistband, NCPD officers were reasonable in concluding that it was more

9

likely than not that there was marijuana in Defendant's car, and were thus legally justified in performing a search of the automobile.

### IV.     Defendant's Statements to Law Enforcement

After Defendant was taken into custody, he was given his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436 (1966). The Government concedes that Defendant was in custody, and does not dispute that he was being subjected to interrogation, at the time he made the statements at issue. However, the Government asserts that these statements should still be admitted because Defendant voluntarily waived his rights, and made these statements of his own free will with knowledge of his rights and the consequences of waiving those rights.

The Government has produced a form, signed by Defendant, acknowledging that his *Miranda* rights had been explained to him, but that "having these rights in mind I wish to waive these rights and answer questions concerning the charge." He then allegedly gave a statement, which was then put into writing by a detective and reviewed and signed by Defendant, admitting that both the marijuana and the gun were his and his alone. He did explicitly deny that he was planning on selling the marijuana.

A suspect's *Miranda* rights are not absolute, and may be waived. In order for a waiver of *Miranda* rights to be valid, such a waiver must be knowing, intelligent, and voluntary. *See Moran v. Burbine*, 475 U.S. 412 (1986). The Government must show that any such waiver was made voluntarily by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157 (1986). While a written waiver such as the one provided by the Government in the present case is not absolute, irrebuttable proof of a valid waiver, it is certainly a strong indication that a defendant was informed of his or her rights and chose to waive them. *See, e.g.*, *United States v. Gupta*, 183 F.3d 615, 618 (7th Cir. 1999) (holding that signed written waiver form was strong

signal that valid waiver had taken place); *United States v. Gray*, 137 F.3d 765, 771 (4th Cir. 1998) (same); *United States v. Mills*, 1 F.3d 414, 418 (6th Cir. 1993) (same); *Derrick v. Peterson*, 924 F.2d 813, 815-16 (9th Cir. 1990) (same); *United States v. Hack*, 782 F.2d 862, 866 (10th Cir. 1986) (same).

Here, the Government claims that Defendant was given his *Miranda* rights, including the consequences of waiving those rights, and chose to waive them and give NCPD officers a voluntary statement regarding the gun and the marijuana. He signed both the waiver form and the written statement form. He has made no allegation that (a) he was not given his rights; (b) he did not understand his rights; (c) he did not voluntarily waive those rights; or (d) he was somehow coerced into either waiving the rights or giving the statement. Testimony at the hearing further supports a finding that Defendant voluntarily waived his *Miranda* rights and gave his statements to law enforcement.

Accordingly, Defendant's statements were lawfully taken, and Defendant's Motion to Suppress this evidence is denied.

## CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that Defendant Christopher Michael Sinclair's Motion to Suppress Evidence is **DENIED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**May 18, 2009**

11